**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **In re:**<br><br>**TURTLE LANE LLC,**<br><br>       **Debtor.** | **Chapter 11**<br><br>**Case No. 25-11733 - CJP** |

**PLAN OF REORGANIZATION OF**
**DEBTOR AND DEBTOR-IN-POSSESSION**

Dated: November 18, 2025

**BOWDITCH & DEWEY, LLP**
75 Federal Street, Suite 1000
Boston, Massachusetts  02110
Christopher M. Condon, Esq.
Telephone:  (617) 757-6513
Facsimile:   (508) 929-3099
Email: ccondon@bowditch.com

Counsel to Debtor

1

4922-3380-1594.1

Turtle Lane LLC, the debtor and debtor-in-possession in the above case, hereby proposes the following liquidating plan of reorganization under Section 1121 of the United States Bankruptcy Code.

## ARTICLE I
## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of the Plan, the following terms shall have the meanings specified in this Article I.  A capitalized term used but not defined in the Plan that is also used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.  Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated.  The words "in the Plan," "the Plan," "hereto," "herein", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

**1.1** "Administrative Expense Claim" shall mean a Claim for costs and expenses of administration of the Bankruptcy Case that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) any actual and necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the Debtor; (b) Professional Fee Claims; (c) all fees and charges assessed against the Estate under Chapter 123 of Title 28 of the United States Code; and (d) all other Claims entitled to administrative claim status pursuant to a Final Order of the Bankruptcy Court.

**1.2** "Allowed" shall mean, with reference to any Claim:

(a)   A Claim that has been listed by the Debtor in its Schedules and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim as to which a proof of claim has been filed;

(b)   A Claim as to which a timely proof of claim has been filed by the Bar Date or within the time permitted by Bankruptcy Rule 3003(c)(3) and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Final Order;

(c)   A Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d)   Any Claim expressly allowed or provided for in the Plan or pursuant to an order of the Bankruptcy Court including, without limitation, the Confirmation Order.

1

**1.3** "Asset(s)" shall mean all of the Debtor's right, title, and interest of any nature in property of any kind, wherever located, as set forth in 11 U.S.C. §541 and the proceeds thereof including without limitation Causes of Action.

**1.4** "Avoidance Actions" shall mean Causes of Action arising or held by the Debtor under Sections 502, 510, 541, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws.

**1.5** "Ballot" means the form approved by the Bankruptcy Court and distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan on which is to be indicated acceptance or rejection of the Plan.

**1.6** "Bankruptcy Case" shall mean the Debtor's bankruptcy case pending in the Bankruptcy Court.

**1.7** "Bankruptcy Code" shall mean Title 11 of the United States Code, as amended from time to time.

**1.8** "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Massachusetts in which the Bankruptcy Case is pending and, to the extent of any reference under 28 U.S.C. §157, the unit of such District Court specified pursuant to 28 U.S.C. §151.

**1.9** "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

**1.10** "Bar Date" shall mean the date established by the Bankruptcy Court for the filing of claims arising on or before the Petition Date.

**1.11** "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Massachusetts.

**1.12** "Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

**1.13** "Causes of Action" shall mean, without limitation, any and all actions, causes of action, choses in action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise including, without limitation, (a) Avoidance Actions, (b) rights of setoff, counterclaim and recoupment, (c) claims and defenses on contracts or for breaches of duties imposed by law, (d) the right to object to Claims or Equity Interests, (e) claims and defenses pursuant to Section 362 of the Bankruptcy Code, (f) claims and defenses for fraud, negligence, conversion, mistake, duress, indemnification and usury, (g) claims and defenses for the violation of M.G.L. c. 93A, (h) claims and defenses for unjust enrichment, and (i) claims for tax refunds.

4922-3380-1594.1

**1.14** "Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (a) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.15** "Class" shall mean each class designated in Article III of the Plan.

**1.16** "Collateral" shall mean any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.17** "Confirmation" shall mean confirmation of this Plan by the Bankruptcy Court under Section 1129 of the Bankruptcy Code.

**1.18** "Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Bankruptcy Case.

**1.19** "Confirmation Hearing" shall mean the hearing before the Bankruptcy Court on Confirmation of the Plan.

**1.20** "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

**1.21** "Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or for which the event that would give rise to such a liability or debt has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

**1.22** "Debtor" shall mean Turtle Lane LLC.

**1.23** "Disclosure Statement" shall mean the disclosure statement relating to the Plan, including, without limitation, all amendments, exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.24** "Disputed Claim" shall mean:

(a)     If no proof of claim relating to a Claim has been filed, a Claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b)     If a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the

3

4922-3380-1594.1

Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtor, the Reorganized Debtor, or a party with standing to dispute the Claim in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

(c)      A Claim that is a Contingent or Unliquidated Claim.

**1.25**   "Disputed Claim Amount" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

**1.26**   "Disputed Claims Reserve" shall have the meaning set forth in Section 6.5 of the Plan.

**1.27**   "Distribution Record Date" shall mean the date that is ten (10) days prior to the entry of the Confirmation Order.

**1.28**   "Effective Date" shall mean the first Business Day on which the conditions set forth in Article X of the Plan have been satisfied.

**1.29**   "Equity Interest" shall mean the interest of any holder of any voting or non-voting equity of the Debtor, including treasury stock and all options, warrants, calls, rights, puts, awards, commitments, or any other agreements of any character to acquire at any time such equity.

**1.30**   "Executory Contract" shall mean a contract to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.31**   "Final Order" shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, the operation or effect of which has not been reversed, stayed, modified or amended and, as to which (a) the time to appeal, seek leave to appeal or certiorari, or request re-argument, review or rehearing has expired and as to which no appeal, petition for leave to appeal or certiorari, or request for re-argument, review or rehearing has been timely filed, or (b) any appeal, petition for leave to appeal or certiorari, re-argument, review, or rehearing that has been or may be made has been resolved by the highest court to which the order or judgment was appealed, from which leave to appeal or certiorari was sought, or to which the request was made, and no further appeal or petition for leave to appeal or certiorari, or request for re-argument, review or rehearing has been or can be taken or granted, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

**1.32**   "Impaired" shall mean, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

4

**1.33** "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that (a) a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien, and (b) all Liens shall be discharged as of the Effective Date unless specifically preserved under the Plan.

**1.34** "Miscellaneous Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff, not including any Secured Claim otherwise classified in the Plan.

**1.35** "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision.

**1.36** "Petition Date" shall mean August 21, 2025.

**1.37** "Plan" shall mean this *Plan of Reorganization* including, without limitation, all exhibits, supplements, appendices and schedules to the Plan, either in their present form or as the same may be altered, amended or modified from time to time.

**1.38** "Priority Claims" shall mean all Claims, if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

**1.39** "Priority Tax Claims" shall mean any Claim of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**1.40** "Professionals" shall mean those Persons (a) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327, 1103, or 1104 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Sections 503(b)(4) or 1129(a)(4) of the Bankruptcy Code.

**1.41** "Professional Fee Claims" shall mean the fees and expenses of Professionals under Sections 330, 331, or 503 of the Bankruptcy Code approved by an Order of the Bankruptcy Court.

**1.42** "Property" shall mean the parcel of real property located at 529 Eastern Avenue in Fall River Massachusetts.

**1.43** "Pro Rata" shall mean, (a) when used with reference to a distribution of property under the Plan, proportionately so that with respect to a particular Allowed Claim or Equity Interest, the ratio of (i)(1) the amount of property distributed on account of such Claim or Equity Interest to (2) the amount of such Claim or Equity Interest, is the same as the ratio of (ii)(1) the amount of property distributed on account of all Allowed Claims, or Equity Interests, of the Class to (2) the amount of all Allowed Claims or Equity Interests in that Class.

5

**1.44**    "Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

**1.45**    "Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

**1.46**    "Unclassified" shall mean, with respect to a Claim, a Claim that is treated under Class 3 of the Plan.

**1.47**    "Unexpired Lease" shall mean a lease to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.48**    "Unimpaired" shall mean a Claim or Equity Interest that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.49**    "Vona" shall mean Donna Vona, the Debtor's manager.

**ARTICLE II**
**TREATMENT OF ALLOWED UNCLASSIFIED CLAIMS**

**2.1**    **Non-Classification.**

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against the Debtor are not classified for the purposes of voting on, or receiving distributions under, the Plan.  All such Claims are instead treated separately in accordance with the terms set forth in this Article II.

**2.2**    **Administrative Expense Claims.**

(a)    General.  Except as provided in Section 2.2(b), Section 2.2(c) and except as otherwise agreed upon in writing between the Debtor and the holder of an Allowed Administrative Expense Claim, each such holder shall be paid in full in Cash on the later of: (i) the date such Allowed Administrative Expense Claim becomes due in accordance with its terms; and (ii) the Effective Date. If the Debtor or the Reorganized Debtor disputes any portion of an Administrative Expense Claim, the Reorganized Debtor shall pay such Administrative Expense Claim within five (5) days after the entry of a Final Order allowing such disputed Administrative Expense Claim.

(b)    U.S. Trustee's Fees.  The outstanding fees due to the United States Trustee pursuant to 11 U.S.C. § 1930 shall be paid in full on or before the Effective Date.

6

(c)    Professional Compensation and Expense Reimbursement Claims. Each Professional may file an application for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date within thirty (30) days after the Effective Date. Any such application granted by the Bankruptcy Court shall be paid upon the earlier of the Effective Date or within ten (10) days of the entry of the order of the Bankruptcy Court approving such application, unless a stay of the order approving the application is obtained.

(b)    Bar Date for Filing Administrative Expense Claims.  Any Person asserting an Administrative Expense Claim, other than Professionals, must file an application for the allowance of such Administrative Expense Claim within thirty (30) days of the Effective Date or the Administrative Expense Claim will be discharged and the Person asserting the Administrative Expense Claim will be forever barred from asserting such a Claim against the Debtor, the Reorganized Debtor or its property, and/or from sharing in distributions under the Plan.

**2.3    Priority Tax Claims.**

As soon as reasonably practicable after, the later of (a) the Effective Date or (b) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, and release of, and in exchange for, such Allowed Priority Tax Claim, (i) payment in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code, or (ii) payment as agreed between the holder of the Allowed Priority Tax Claim and the Reorganized Debtor.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

The Claims against and Equity Interests in the Debtor are categorized below for all purposes under the Plan including voting, Confirmation and distribution pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.

**3.1    Claim and Equity Interest Categories.**

Claims against and Equity Interests in the Debtor have been classified as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Secured Claims | Impaired | Yes |
| 2 | Miscellaneous Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Equity Interests | Impaired | No |

7

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1     Class 1 – Secured Claims

(a)     <u>Impairment and Voting</u>.  The Allowed Class 1 Claim may be impaired and the holder of such Allowed Secured Claim is entitled to vote to accept or reject the Plan.

(b)     <u>Allowance and Treatment</u>.

The holder of the Allowed Class 1 Claim shall retain its Lien to secure the amount of its Allowed Claim until such time as the Allowed Class 1 Claim is paid in full. Upon the payment in full of the Allowed Class 1 Claim, the Allowed Class 1 Claim shall be discharged and any Liens securing such Claim shall be discharged and released without further act or action by the Debtor. Within ten (10) days of the payment in full of the Allowed Class 1 Claim, the holder of such Claim shall deliver to the Reorganized Debtor discharges of any Liens securing such Claim.

Commencing upon the later of the 30th day following the Effective Date or such date as the Claim becomes an Allowed Claim, in full and complete satisfaction, settlement, release and discharge of its Allowed Claim, the holder of the Allowed Class 1 Claim shall receive payment in full of its Allowed Claim as follows: (i) in Cash, (ii) from the Net Proceeds of any sale or refinancing of the Property, (iii) in monthly installments of principal and interest, based on interest at a rate of eight and one-half percent (8.5%) per annum and a thirty (30) year amortization with all unpaid principal and interest due at the end of the 60th month following the Effective Date; <u>provided that</u>, the outstanding amount due may be pre-paid at any time without penalty, (iv) upon such terms as is agreed to in writing between the Debtor and the holder of the Allowed Class 1 Claim, or (v) upon such terms as may be determined by the Bankruptcy Court.

### 4.2     Class 2- Miscellaneous Secured Claims

(a)     <u>Impairment and Voting</u>.  Class 2 may be impaired under the Plan. Each holder of an Allowed Class 2 Claim is entitled to vote to accept or reject the Plan on account of its Class 2 Claim.

(b)     <u>Allowance and Treatment</u>.

The holder of the Allowed Class 2 Claim shall retain its Lien to secure the amount of its Allowed Claim until such time as the Allowed Class 2 Claim is paid in full. Upon the payment in full of the Allowed Class 2 Claim, the Allowed Class 2 Claim shall be discharged and any Liens securing such Claim shall be discharged and released without further act or action by the Debtor. Within ten (10) days of the payment in full of the Allowed Class 2 Claim, the holder of such Claim shall deliver to the Reorganized Debtor discharges of any Liens securing such Claim.

8

Commencing upon the later of the 30th day following the Effective Date or such date as the Claim becomes an Allowed Claim, in full and complete satisfaction, settlement, release and discharge of its Allowed Claim, the holder of the Allowed Class 2 Claim shall receive payment in full of its Allowed Claim as follows: (i) in Cash, (ii) from the Net Proceeds of any sale or refinancing of the Property, (iii) in monthly installments of principal and interest, based on interest at a rate of eight and one-half percent (8.5%) per annum and a thirty (30) year amortization with all unpaid principal and interest due at the end of the 60th month following the Effective Date; provided that, the outstanding amount due may be pre-paid at any time without penalty, (iv) upon such terms as is agreed to in writing between the Debtor and the holder of the Allowed Class 2 Claim, or (v) upon such terms as may be determined by the Bankruptcy Court.

**4.3    Class 3 – General Unsecured Claims.**

(a)    <u>Impairment and Voting</u>.  Class 3 may be impaired under the Plan. Each holder of an Allowed Class 3 Claim is entitled to vote to accept or reject the Plan on account of its Class 3 Claim.

(b)    <u>Claim Treatment</u>. Commencing upon the later of the 30th day following the Effective Date or such date as the Claim becomes an Allowed Claim, in full and complete satisfaction, settlement, release and discharge of the Allowed General Unsecured Claims, the holders of Allowed General Unsecured Claims shall receive payment of their Allowed General Unsecured Claims: (i) in Cash, (ii) from the Net Proceeds of the sale of the Property, (iii) in equal monthly installments for a period of six (6) months following the Effective Date, (iv) upon such terms as is agreed to in writing between the Debtor and the holder of an Allowed Class 3 Claim, or (v) upon such terms as may be determined by the Bankruptcy Court.

**4.4    Class 4 – Equity Interests.**

(a)    <u>Impairment and Voting</u>.  Class 4 is presumed to be unimpaired under the Plan and is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan on account of its Equity Interests.

(b)    <u>Treatment</u>.  Equity Interests shall be retained under the Plan, provided that management and control of the Debtor shall vest exclusively in the Reorganized Debtor.   The holder of Equity Interests is entitled to receive the balance of the Assets, if any, following settlement of all Allowed Claims.

**4.5    Reservation of Rights.**

The Reorganized Debtor reserves the right to, among other things, (a) object to any Claim, (b) contest the right of the holder of any Claim or Equity Interest to receive distributions under the Plan, and (c) seek to subordinate any Claim for inequitable conduct or otherwise.

**4.6    Special Provision Regarding Unimpaired Claims.**

Except as otherwise provided in this Plan, nothing shall affect the Reorganized Debtor's rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including

9

but not limited to, all rights with respect to legal and equitable defenses to, setoffs against, or recoupments of Unimpaired Claims.

**4.7     Voting of Claims.**

Each holder of an Allowed Claim in an Impaired Class that retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan.  Each holder of the foregoing Allowed Claims electing to vote shall do so on a duly executed and delivered Ballot and in accordance with procedures set forth in the applicable order of the Bankruptcy Court establishing Plan voting procedures.

**4.8     Acceptance by Impaired Classes.**

An Impaired Class of Claims shall have accepted the Plan if (a) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**4.9     Elimination of Classes.**

To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under Section 1129(a)(8) of the Bankruptcy Code.

**4.10    Nonconsensual Confirmation.**

If any Impaired Class entitled to vote does not accept the Plan by the requisite majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any Impaired class is deemed to have rejected the Plan, the Debtor reserves the right (a) to seek Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code; and/or (b) to amend the Plan in accordance with Section 12.3 of the Plan.

**ARTICLE V**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**5.1     Plan Funding.**  The Debtor intends to refinance and/or market and sell the Property to satisfy Allowed Claims as described in Section 4.  Vona shall pay all other amounts necessary to make the distributions under this Plan.

**5.2     Distribution of Proceeds of Refinancing or Sale.** The Net Proceeds of any refinancing or sale of the Property shall be distributed first to the holders of Allowed Claims secured by Liens on the Property, and then as follows:

10

4922-3380-1594.1

(a)    First, Pro-Rata to the holders of Allowed Professional Fee Claims and Administrative Expense Claims until such Claims are paid in full;

(b)    Second, Pro-Rata to the holders of Allowed Priority Claims until such Claims are paid in full;

(c)    Third, Pro-Rata to the holders of Allowed General Unsecured Claims until such Claims are paid in full; and

(d)    Fourth, to the Debtor.

### 5.3    Waiver of Stay of Confirmation Order.

Unless otherwise specifically provided in the Confirmation Order, the provisions of the Confirmation Order and all rights, remedies, privileges and benefits in favor of the Debtor and the Reorganized Debtor in the Plan and the Confirmation Order shall be effective immediately upon entry of the Confirmation Order, and the stay provided for in Federal Rules of Bankruptcy Procedure 3020(e), 6004(h) and 6006(d) shall be deemed waived.

### 5.4    Corporate Action.

Confirmation of the Plan shall constitute authorization for the Reorganized Debtor to effectuate the Plan and to execute, issue, deliver, file or record all contracts, instruments and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan without further notice to or action, order or approval of the Bankruptcy Court or any other entity except for those expressly required pursuant to this Plan. All matters provided for in the Plan involving any corporate action to be taken by or required of the Debtor in connection with the Plan shall be deemed to have occurred, and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects, without any requirement of further action by the Debtor, its agents, representatives, stockholders, members, managers, officers, directors or affiliates.

### 5.5    Organization Documents and Good Standing.

As of the Effective Date, the Debtor's Organization Documents shall be amended as necessary to effectuate the terms of the Plan and shall become the Organization Documents of the Reorganized Debtor. To the extent that there is any inconsistency between the Plan and any of the Organization Documents, the terms of the Plan shall control. To the extent the Debtor is not in compliance as of the Effective Date with any state or local law requirements necessary to remain as an organized legal entity in good standing and/or remain authorized as organized legal entities to conduct business in any jurisdiction, the Debtor and/or the Reorganized Debtor, as the case may be, shall be deemed to be in compliance with any such laws if they comply with such laws within six months after the Effective Date.

11

**5.6      Revesting of Property.**

The Assets shall vest in the Reorganized Debtor on the Effective Date.  Except as may be expressly provided in the Plan or in a Non-Appealable Order of the Bankruptcy Court, no Assets shall be deemed abandoned and no defense, set-off, counterclaim or right of recoupment of the Debtor shall be deemed waived, released or compromised.

**5.7      Preservation of Causes of Action.**

Except as provided in, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, the Confirmation Order, any Non-Appealable Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, the Reorganized Debtor will exclusively retain and may enforce, and the Debtor expressly reserve and preserve for these purposes, in accordance with sections 1123(a)(5)(A) of the Bankruptcy Code, any Claims, Causes of Action and demands and rights relating thereto that the Debtor or the Estate may hold against any person or entity.  No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with the confirmation, consummation of effectiveness of the Plan. Among the Causes of Action that are preserved are the following: (a) Avoidance Actions, including, without limitation, those set forth on the Debtor's Statement of Financial Affairs that have been filed with the Bankruptcy Court ; (b) Rights of setoff, counterclaim and recoupment; (c) claims and defenses on contracts or for breaches of duties imposed by law; (d) the right to object to claims or interests; (e) claims and defenses pursuant to Section 362 of the Bankruptcy Code; (f) claims and defenses for fraud, negligence, conversion, mistake, duress, indemnification and usury; (g) claims and defenses for the violation of M.G.L. c. 93A; (h) claims and defenses for unjust enrichment; (i) claims for tax refunds; and (j) pre-petition litigation in which any of the Debtor was the plaintiff.

**5.8      Compromises.**

After the Effective Date and except as otherwise provided in the Plan, the Reorganized Debtor is authorized, without further Bankruptcy Court order or notice to creditors and/or parties in interest, to compromise, settle and/or otherwise dispose of any disputed Claims and/or Causes of Action.

**5.9      Default.**

No event of default under the Plan shall occur unless, in the event of a breach of the Reorganized Debtor's obligations under the Plan, the holder of the Allowed Claim asserting the default shall provide written notice of such breach to the Reorganized Debtor and such breach is not cured: (i) in the event of a breach that can be cured by the payment of a sum of money, within ten (10) days of the Reorganized Debtor's receipt of such notice; and (ii) for any other breach, within thirty (30) days of the Liquidating Agent's receipt of such notice, provided that, if such non-monetary breach cannot reasonably be cured within such 30-day period and the Reorganized Debtor has commenced curing such breach and continues to cure such breach, the

4922-3380-1594.1

thirty (30) day period shall be extended for such time as is reasonably necessary to cure such breach.

### 5.10    Retention of Professionals.

The Reorganized Debtor may retain such attorneys (including special counsel) accountants, advisors, expert witnesses, and other professionals as he considers advisable without necessity of approval of the Court.  Persons who served as Professionals to the Debtor prior to the Effective Date may provide services to the Reorganized Debtor.  The fees and expenses of the professionals retained by the Reorganized Debtor shall be paid by him in the ordinary course of business without the need for the approval of the Bankruptcy Court.

### 5.11   Final Decree.

The Reorganized Debtor shall be authorized to prepare and file a motion requesting that the Court enter a Final Decree in the Bankruptcy Case.

## ARTICLE VI

## DISTRIBUTIONS AND RESOLUTION OF DISPUTED CLAIMS

### 6.1    Method and Timing of Distributions Under the Plan.

All distributions under the Plan to be made by the Reorganized Debtor to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules as of the Distribution Record Date unless the Reorganized Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules. Distributions under the Plan shall be made by check. The Reorganized Debtor shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date

### 6.2    Objections to Disputed Claims.

The Reorganized Debtor may file any objections to Claims against the Debtor.

### 6.3    Deadline for Objecting to Disputed Claims.

Except as otherwise provided by order of the Bankruptcy Court, the Reorganized Debtor may file an objection to a Claim against the Debtor until the later of: (a) the date that such Claim becomes due and payable in accordance with its terms, or (b) ninety (90) days after the Effective Date.

13

**6.4     Estimation of Claims.**

After the Effective Date, the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall have jurisdiction to estimate a Disputed Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim.  In the event the Bankruptcy Court estimates any Disputed Claim, the estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the Bankruptcy Court determines the maximum limitation of a Disputed Claim, such determination shall not preclude the Reorganized Debtor from pursuing any supplemental proceedings to object to any payment of such Claim.  All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not exclusive remedies.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**6.5     Disputed Claims Reserve.**

(a)     Establishment.  A reserve shall be maintained equal to 100% of the distributions to which holders of Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims or such lesser amount as required by a Final Order.

(b)     Investment of Cash.  Cash in the Disputed Claims Reserve may be invested only in Cash Equivalents having maturities sufficient to enable the holder of the Dispute Claim Reserve to make all necessary payments to holders of Disputed Claims if, and when, such Disputed Claims become Allowed Claims.  Any interest, income, distributions or accretions on account of such investment in Cash Equivalents in the Disputed Claims Reserve shall be for the sole benefit and account of the Reorganized Debtor, and the Reorganized Debtor shall be solely responsible for the payment of any income or other taxes arising therefrom.

(c)     Distributions upon Allowance of Disputed Claims.  The holder of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall receive distributions of Cash from the Disputed Claims Reserve as soon as practicable following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Non-Appealable Order.  Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to the holder of such a Claim under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date.  No holder of a Disputed Claim shall have any claim against the respective Disputed Claims Reserve or the Reorganized Debtor with respect to such Claim until the Disputed Claim shall become an Allowed Claim.

**6.6     Reversion of Unclaimed Checks.**

The following amounts shall revert to and be vested in the Reorganized Debtor free and clear of any claim or interest of any holder of a Claim under the Plan: (a) the amount of any checks issued for distributions to the holders of Allowed Claims under the Plan that remain uncashed for a period of 180 days after the date of such distribution; and (b) to the extent that a

4922-3380-1594.1

Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash or Cash Equivalents in the Disputed Claims Reserve attributable to such Disputed Claim over the amount of Cash actually distributed on account of such Disputed Claim.

## ARTICLE VII
## VOTING THE PLAN AND CRAMDOWN

**7.1    Voting of Claims.**  Each holder of an Allowed Claim in an impaired Class that retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan. Each holder of the foregoing Allowed Claims electing to vote shall do so on a duly executed and delivered ballot and in accordance with procedures set forth in the applicable order of the Bankruptcy Court establishing Plan voting procedures.

**7.2    Nonconsensual Confirmation.**  If any impaired Class entitled to vote does not accept this Plan by the requisite majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtor reserves the right to: (a) seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code, and/or (b) amend the Plan in accordance with Section 12.3 of this Plan.

## ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1    Rejection of Executory Contracts And Unexpired Leases.**

Pursuant to Sections 1123(b)(2) and 365(a) of the Bankruptcy Code, any executory contract or unexpired lease that (i) has not expired by its own terms on or prior to the Confirmation Date, (ii) has not been assumed, assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (iii) is not the subject of a motion to assume or reject which is pending at the time of the Confirmation Date, (iv) is not designated by the Debtor as being an executory contract or unexpired lease to be assumed at the time of confirmation of this Plan, (v) is not an insurance policy, or (vi) is not an unexpired lease where the Debtor is the lessor, shall be deemed rejected on the Effective Date.

**8.2    Rejection Damage Claims.**

If the rejection of an executory contract or unexpired lease by the Debtor results in a Claim by the other party or parties to such contract or lease, any claim for such damages, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, the Reorganized Debtor and its respective properties, agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before thirty (30) days following the Confirmation Date.

4922-3380-1594.1

## ARTICLE IX

## RELEASE AND SATISFACTION OF CLAIMS

**9.1     Discharge/Injunction Relating to the Plan.**

(a)     <u>Discharge</u>. As of the Effective Date, all Persons are hereby permanently enjoined from commencing, continuing or enforcing in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor, the Estate, and/or the Reorganized Debtor, on account of, or respecting any Claims, debts, rights, obligations, Causes of Action or liabilities against the Debtor, except to the extent expressly permitted under the Plan.

(b)     <u>Injunction</u>. All Persons are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor, the Estate or the Reorganized Debtor on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged pursuant to this Plan, except to the extent expressly permitted under this Plan.

**9.2     Releases of Debtor by Holders of Claims.**

Except as otherwise set forth in the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, (a) each holder of a Claim that votes in favor of the Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each Person that has held, holds or may hold a Claim or at any time was a creditor of the Debtor and that does not vote on the Plan or votes against the Plan, in each case will be deemed to forever release and waive all claims (including any derivative claims), obligations, suits, judgments, damages, demands, rights, causes of action and liabilities (other than the right to enforce the Reorganized Debtor's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Estate, the Bankruptcy Case or the Plan that such entity has, had or may have against the Debtor, or the Estate.

**9.3     Cancellation of Existing Indebtedness and Liens.**

Except as may otherwise be provided in the Plan, on the Effective Date: (a) all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtor, together with any and all Liens securing same, shall be canceled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, (b) the obligations of the Debtor thereunder shall be deemed cancelled and released, and (c) all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens or other security interests, including any rights to any collateral thereunder, will revert to the Reorganized Debtor.

16

4922-3380-1594.1

Upon request, any holder of a Claim shall promptly provide the Reorganized Debtor with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing such Claim.

**9.4    Exculpation.**

Except as otherwise set forth in the Plan, none of the Debtor, the Reorganized Debtor or any of their respective employees, advisors, attorneys, agents, successors or assigns, shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the administration of the Bankruptcy Cases, the pursuit of confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan occurring prior to the Effective Date, provided that the terms of this Section 9.4 shall not apply to any liability for willful misconduct or ultra vires acts.

**9.5    Setoffs.**

Except as otherwise provided in the Plan, nothing contained in the Plan shall constitute a waiver or release by the Estate of any rights of setoff the Estate may have against any Person. Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that the Debtor or the Reorganized Debtor, as applicable, may have against the holder of any Claim.

**ARTICLE X**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN**

**10.1    Conditions Precedent to the Effective Date.**

The following are conditions precedent to the occurrence of the Effective Date under the Plan, each of which must be satisfied unless waived in accordance with Section 10.2 of this Plan:

(a)    The Confirmation Order, in form and substance reasonably acceptable to the Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order provided that, as set forth in Section 10.2 herein, the Debtor may waive the requirement that the Confirmation Order shall have become a Final Order.

(b)    All actions, documents and agreements necessary to implement the Plan shall be in form and substance reasonable acceptable to the Debtor and shall have been effected or executed and delivered to the required parties and, to the extent necessary, filed with the applicable governmental units in accordance with applicable laws.

4922-3380-1594.1

**10.2    Waiver of Conditions.**

Except for the condition set forth in Sections 10.1(a) of the Plan, the Debtor may waive the other condition precedent to the effectiveness of the Plan set forth in Section 10.1 without notice to any creditors or parties in interest and without Bankruptcy Court approval.  The failure to satisfy or waive any condition precedent to the occurrence of the Effective Date may be asserted by the Debtor or the Reorganized Debtor, regardless of the circumstances giving rise to the failure of such condition to be satisfied.

**10.3    Effect of Non-occurrence of Conditions to the Effective Date.**

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor, or (b) prejudice in any manner the rights of the Debtor, or constitute an admission, acknowledgement, offer or undertaking by the Debtor.

**ARTICLE XI**
**RETENTION OF JURISDICTION**

From and after the occurrence of the Effective Date, the Bankruptcy Court shall have jurisdiction over the matters arising out of, and related to, the Bankruptcy Case and the Plan, as legally permissible, pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code including, without limitation:

(a)    To hear and determine any and all objections to the allowance, disallowance, determination, liquidation, classification or estimation of any Claims or Equity Interests or any controversies as to the priority and classification of any Claims (or any security with respect thereto) or Equity Interests or to estimate any Disputed Claim;

(b)    To hear and determine any and all Professional Fee Claims, authorized pursuant to the Plan or the Bankruptcy Code;

(c)    To hear and determine any and all applications (whether or not pending at or on the Confirmation Date) related to the rejection, assumption or assumption and assignment of Executory Contracts and Unexpired Leases to which the Debtor is a party, and to hear, determine and allow any Claims resulting therefrom;

(d)    To enforce and adjudicate the provisions of the Plan;

(e)    To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(f)    To determine any Claim or liability to a governmental unit which may be asserted as a result of the transactions contemplated in the Plan;

18

(g)     To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(h)     To determine such other matters as may be necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(i)     To resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, enforcement or vacatur of the Plan or any Person's obligations incurred in connection with the Plan;

(j)     To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan, except as otherwise provided herein;

(k)     To determine any other matters that may arise in connection with the Plan, the Disclosure Statement, the Confirmation Order or any other contract, instrument, release, indenture or other agreement or document created in connection with the foregoing;

(l)     To resolve any cases, controversies, suits or disputes with respect to releases, injunctions and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions or other provisions;

(m)     To determine any and all adversary proceedings, application, motions and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtor after the Effective Date;

(n)     To hear and determine any Claims, rights, demands and Causes of Action arising prior to the Effective Date preserved pursuant to Section 5.7 of the Plan;

(o)     To issue any orders in aid of execution of the Plan to the extent authorized or contemplated by Section 1142 of the Bankruptcy Code; and

(p)     To enter an order and/or final decree concluding the Bankruptcy Case.

**ARTICLE XII**
**MISCELLANEOUS**

**12.1     Continuation of Injunctions or Stays Until Effective Date.**

All injunctions or stays provided for in the Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**12.2     Exemption from Transfer Taxes.**

In accordance with Section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer

19

4922-3380-1594.1

pursuant to, in implementation of, or as contemplated by the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by the Plan, (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with the Plan, and the issuance, renewal, modification or securing of indebtedness by such means, and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, sales tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.  Each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under the Plan is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any such tax or governmental assessment.

### 12.3   Amendment or Modification of the Plan.

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Debtor or the Reorganized Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit to the Plan or in any Plan document.

### 12.4   Severability.

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Debtor, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

20

**12.5    Revocation or Withdrawal of the Plan.**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.

**12.6    Binding Effect.**

The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**12.7    Notices.**

All notices, requests and demands to or upon the Debtor or the Reorganized shall only be effective if in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed to the Reorganized Debtor as follows:

Turtle Lane LLC
c/o Bowditch & Dewey, LLP
75 Federal Street, Suite 1000
Boston, MA  02110
Attn:  Christopher M. Condon, Esq.
ccondon@bowditch.com

**12.8    Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law of such jurisdiction.

**12.9    Withholding and Reporting Requirements.**

In connection with the consummation of the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**12.10   Post-Confirmation Fees, Final Decree.**

The Reorganized Debtor will be responsible for timely payment of the fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until the Bankruptcy Case is converted, dismissed, or closed. After Confirmation, the Reorganized Debtor will file the quarterly Post-Confirmation Reports, UST Form 11-PCR, with the Bankruptcy Court, in accordance with 28 C.F.R. §58.8, for so long as the Bankruptcy Case remains open or is reopened.

4922-3380-1594.1

**12.11  Headings.**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**12.12  Inconsistency.**

In the event of any inconsistency between the Plan and the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

TURTLE LANE LLC,

/s/ *Christopher M. Condon*
Christopher M. Condon (BBO #652430)
BOWDITCH & DEWEY, LLP
75 Federal Street, Suite 1000
Boston, Massachusetts 02110
Tel: (617) 757-6513
Date: November 18, 2025      Email: ccondon@bowditch.com

22

4922-3380-1594.1